[No. 15650-8-III. Division Three. January 27, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN JEREMY BOOT, *Appellant*.

*Paul J. Wasson*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

KATO, J. — Kevin Boot was convicted of the aggravated first degree murder of Felicia Reese and sentenced to life imprisonment without possibility of parole. Contending the court erred by denying his motion for change of venue and admitting evidence of other crimes and his gang activities, he appeals. Mr. Boot also claims there was insufficient evidence to support his conviction and the court improperly instructed the jury on accomplice liability. We affirm.

After a police investigation, the State charged Kevin Boot and his cousin Jerry Boot with aggravated first degree murder or, in the alternative, first degree felony murder. The two cases were severed for trial.

On December 28, 1994, Richard Wade was walking along the Centennial Trail by the Spokane River when he discovered the body of Felicia Reese. Detective Mike Massong arrived at the scene and noticed there was no blood trail near the body, an indication the murder occurred somewhere else. Ms. Reese was shot in the face three times. One of the bullets went directly through her brain, causing death.

A nearby resident told police he saw three people in the vicinity the night before in a small, light-colored car with a flat tire. Another resident told police he saw two people walking in the area.

A light-colored compact car was found two blocks from where the body was discovered. The right rear tire was flat and appeared to have been driven on. The car was registered to Felicia Reese. An officer found a shell casing on the floor. Blood spatters found in the car were tested, but

the tests did not reveal whether the shots were fired from the driver's or front passenger's seat.

Ms. Reese was last seen alive on December 27, 1994. After attending the Harvest Christian Fellowship Conference, Ms. Reese left around 9:15 P.M. to take her fiancé, Kenneth Whitehall, to work. She dropped him off and said she would pick him up the following morning. Mr. Whitehall never saw her again. Another conference attendee stated Ms. Reese did not return after leaving to take Mr. Whitehall to work.

On December 29, Deputy Robert Soden spotted a speeding car. He ran a check on the license plate and learned the car was stolen. The deputy began pursuit and called for assistance. Mr. Boot and another man ditched the car. Officers Chapman and Schaber saw one of the men throw an object over a fence. Officer Chapman detained them. Officer Powell retrieved a .380 caliber pistol from a yard behind the fence. A ballistics report verified the three bullets removed from Ms. Reese's skull were fired from the pistol found by Officer Powell.

Earlier, on December 25, 1994, Mr. Boot was with Jerry, who had a .380 caliber pistol. Tyler Marsh, Mr. Boot, and Jerry were driving around that evening when they saw two men "flashing gang signs." Mr. Boot and Jerry got out of the car to confront them. Mr. Marsh later told Detective Grabenstein that Mr. Boot claimed to have shot at the individuals. The two victims heard gunshots, but could not identify the shooter.

On December 26, Mr. Boot and Jerry were at Rea Bevins' apartment in the valley. The Boots called in a pizza order for the wrong address, planning to rob the delivery person. Mr. Boot had a gun; Jerry had mace. When they returned to the apartment, Jerry was scared. Mr. Boot stated he had shot the pizza man. Although admitting his involvement in the robbery, Mr. Boot denied any shooting. The delivery person said he heard no gunshots and was maced.

While on patrol on December 27, Robert Vananrooy, a security guard at Deaconess Hospital, noticed two men put-

ting garbage cans in the middle of the road. He put his spotlight on them; they ran away. Mr. Vananrooy saw them again later on a sidewalk by a parking lot, where he told them he would call police if he saw them trespassing. The guard later identified Jerry Boot as one of the two men.

Mr. Boot admitted he and Jerry were looking for a car to steal the night of December 27. Unsuccessful elsewhere, they went to the Sheraton. Mr. Boot said Jerry pointed a gun at Ms. Reese as she left her car after parking in the Sheraton lot. Jerry told her to get back in and for Mr. Boot to drive. They went to Minnehaha Park. Jerry asked Ms. Reese for money; she gave him $43. Mr. Boot testified Jerry then fired four shots with three hitting Ms. Reese and one flattening a tire. They drove to the river to dispose of the body and afterwards went to their grandparents' house.

Later that evening, they stole another car and went to Josh Glanville's house. Mr. Glanville said Mr. Boot told him he had shot a girl in the face. Mr. Boot, however, claimed he said Jerry shot the girl.

Two nights before the murder, Belinda Shepard was at Amelia Contreras' house where Jerry gave her a gun to pull on Mr. Boot to scare him. Mr. Boot took the gun from her and put it to Ms. Contreras' head. When he did, everyone laughed at Mr. Boot and told him he was too much of a baby to shoot her. Ms. Contreras and Mr. Boot both denied he held a gun to her head.

An inmate at the county jail also said Mr. Boot admitted shooting Ms. Reese. Additional tests revealed Jerry's fingerprints were found in Ms. Reese's car, while Mr. Boot's were not.

The jury found Mr. Boot guilty of aggravated first degree murder. The court sentenced him to life imprisonment without possibility of parole.

Mr. Boot contends the court should have granted his motion for change of venue. Before trial, he moved for change of venue based on the extensive pretrial publicity associated with the case. Mr. Boot claimed several newspaper articles were prejudicial. Most were published just after the

murder and a year prior to trial. Three articles appeared within a month of jury selection. The publicity in the month preceding trial contained information about the victim, her family and friends, and the facts of the case, including accounts of Mr. Boot's criminal activities in the days prior to the murder.

The potential jurors answered an extensive questionnaire. The court conducted two days of individual voir dire, granting several challenges for cause because of the effect of the publicity. The court denied the motion for change of venue, but agreed to sequester the jury.

A trial court's decision regarding a change of venue motion will not be overturned absent an abuse of discretion. *State v. Hoffman*, 116 Wn.2d 51, 71, 804 P.2d 577 (1991). An abuse of discretion occurs when no reasonable person would adopt the trial court's position. *State v. Nelson*, 108 Wn.2d 491, 504-05, 740 P.2d 835 (1987). Due process requires that a motion to change venue be granted when a probability of prejudice to the defendant is shown. *State v. Crudup*, 11 Wn. App. 583, 586, 524 P.2d 479, *review denied*, 84 Wn.2d 1012 (1974). In determining whether a motion to change venue is proper, the court must consider these nine factors:

> (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of the prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of the publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

*Id.* at 587 (citing Peter G. Guthrie, Annotation, *Pretrial Publicity in Criminal Case as Ground for Change of Venue*, 33 A.L.R.3D 17, 33 (1970)).

■ Mr. Boot's argument focuses on the first factor. The publicity here was mostly factual and described the crime, the victims, and the police investigation. These types of articles are generally not inflammatory since the crime, not the publicity, generates public reaction. *See State v. Rice*, 120 Wn.2d 549, 557, 844 P.2d 416 (1993). This case attracted publicity because of the nature of the crime. *See id.* (citing *State v. Rupe*, 101 Wn.2d 664, 675, 683 P.2d 571 (1984)). But the mere existence of pretrial publicity alone does not warrant a change of venue. *State v. Laureano*, 101 Wn.2d 745, 756, 682 P.2d 889 (1984).

■ Most of the remaining factors also do not support Mr. Boot. Many of the articles upon which he relies were published immediately after the crime and a year prior to trial. Taking extreme caution in jury selection by conducting individual voir dire to determine potential jurors' familiarity with the publicity and its effect upon them, the court granted several challenges for cause. Both sides had three additional peremptory challenges. The size of the area from which the jurors were drawn was large. The factual publicity was extensive and favors a change, but Mr. Boot has failed to show a probability of unfairness or prejudice from that pretrial publicity. Indeed, widespread factual publicity does not invariably justify a change of venue. *Rice*, 120 Wn.2d at 557. Although the seriousness of the crime also favors a change, the remaining factors do not. In these circumstances, the court did not abuse its discretion by denying the motion for change of venue.

Mr. Boot filed a pretrial motion in limine seeking to exclude certain evidence of other crimes, wrongs, and bad acts under ER 404(b). He sought to have excluded any evidence of his discharging a firearm on December 25, 1994. In that incident when he was with Jerry, Mr. Boot fired a .380 caliber handgun towards two persons walking on the street. He next asked the court to exclude any evidence about (1) the pizza robbery on December 26; (2) his alleged assault of Ms. Contreras when he pointed a gun at her head; (3) his unlawful taking of a motor vehicle on

December 28; (4) his possession or use of a firearm prior to December 27; (5) evidence about gangs and his gang affiliations; and (6) his drug usage.

After a hearing in which it determined these incidents had occurred, the court admitted evidence of Mr. Boot's use of a gun prior to December 27 and his gang affiliation as being probative of motive. The court also admitted evidence of the prior gun use and gang involvement on the issue of premeditation. As a third ground, the court admitted the evidence of collateral criminal activity under the res gestae exception to ER 404(b). The court denied the motion in limine except for excluding evidence of Mr. Boot's prior drug usage. In its order, the court allowed evidence of the unlawful discharge of a firearm by Mr. Boot on December 25, 1994; the pizza robbery on December 26; the alleged assault of Ms. Contreras; the unlawful taking of a motor vehicle on December 28; gang affiliation or membership; and possession or use of a firearm by Mr. Boot prior to December 27, 1994.

■ Evidence of a defendant's prior bad acts is admissible for limited purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b). Prior bad acts are admissible only if the evidence is logically relevant to a material issue before the jury, and the probative value of the evidence outweighs any prejudicial effect. *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982). Evidence is relevant and necessary if the purpose in admitting the evidence is of consequence to the action and makes the existence of the identified act more probable. *State v. Dennison*, 115 Wn.2d 609, 628, 801 P.2d 193 (1990). The decision to admit evidence under ER 404(b) falls within the trial court's discretion. *State v.*

*Walker*, 75 Wn. App. 101, 108, 879 P.2d 957 (1994), *review denied*, 125 Wn.2d 1015 (1995).

■■ Finding it probative of motive, the court admitted evidence of Mr. Boot's gun use prior to December 27 and his gang affiliation. Motive is an inducement which tempts a mind to commit a crime. *State v. Bowen*, 48 Wn. App. 187, 191, 738 P.2d 316 (1987). Although the State is not required to prove motive as an element of the offense, evidence showing motive may be admissible. *See State v. Powell*, 126 Wn.2d 244, 260, 893 P.2d 615 (1995). The court must identify and determine whether the evidence is relevant and necessary to prove an essential element of the crime charged. *Id.* at 258.

The court admitted evidence of Mr. Boot's pointing the gun at Ms. Contreras' head because it showed motive. During that incident, onlookers laughed and told him he was too much of a baby to shoot someone. Evidence of prior assaults is admissible to show motive. *Id.* at 260. The testimony on gangs established that killing someone heightened a gang member's status. Mr. Boot acknowledged he was a gang member. The evidence shows the context in which the murder was committed. Its probative value outweighs any prejudice. The court did not err by admitting this evidence.

■ ■ As a second ground, the court also admitted evidence of Mr. Boot's gang affiliation and incidents of gun use as being probative of premeditation. Mr. Boot was charged with aggravated first degree murder, thus requiring the State to establish premeditation. *See* RCW 9A.32.030(1). Premeditation is the deliberate formation of an intent to take a human life. *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). The evidence reflected that killing someone increased a gang member's status and Mr. Boot was a gang member. This shows premeditation since it suggests he had a deliberate intent to kill Ms. Reese to gain higher gang status. Mr. Boot's prior acts involving a gun demonstrated his escalating gun use in the context of his quest for higher

gang status and was also evidence of premeditation. Again, the probative value outweighs any prejudice.

■ The court admitted the evidence on a third ground under the res gestae exception to ER 404(b). The res gestae exception admits evidence of other bad acts "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980) (quoting McCormick's Handbook of the Law of Evidence § 190, at 448 (Edward W. Cleary gen. ed., 2d ed. 1972)), *aff'd,* 96 Wn.2d 591, 637 P.2d 961 (1981). Each act must be a piece necessarily admitted to ensure the jury has the complete picture. *Powell*, 126 Wn.2d at 263.

In *State v. Lane*, 125 Wn.2d 825, 889 P.2d 929 (1995), there were three defendants and the evidence suggested only one of them had actually shot the victim. The trial court admitted evidence of prior bad acts the three had committed together in order to establish how they interacted. *Id.* at 835. It found this evidence was necessary for a purpose other than showing the codefendants' propensity to commit a crime. *Id.* at 834. The *Lane* court went on to state the evidence of other crimes was thus admissible so long as the State could establish by a preponderance of the evidence that the acts occurred and were committed by the defendants. *Id.* (citing *Tharp*, 96 Wn.2d at 593-94).

This case presents a similar situation. Mr. Boot and Jerry were codefendants. Evidence of the Boots' actions close in time and place to Ms. Reese's murder was necessary to show how they acted together. Their interaction was also probative of who was in possession of the gun and who used it. The evidence established an escalating chain of events of increasingly serious crimes in a short period of time. Its admission was necessary to permit the jury to get the whole picture and try to make some sense out of a senseless crime. These events were established by a preponderance. In light of its probative value, the evidence was not unduly prejudicial. The court properly admitted it under the res gestae exception to ER 404(b).

 We will uphold the trial court's decision to admit evidence of prior misconduct if one of the bases cited is justified. *Powell*, 126 Wn.2d at 264. Here, all three bases for admitting the evidence were justified. The trial court correctly relied on the motive, premeditation, and res gestae exceptions. There was no abuse of discretion.[1]

 Mr. Boot next challenges the sufficiency of the evidence supporting his conviction. Evidence is sufficient to support a conviction if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences are drawn in the light most favorable to the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A defendant claiming insufficiency admits the truth of all the State's evidence. *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995). Questions of credibility are left to the trier of fact and will not be overturned on appeal. *State v. Tocki*, 32 Wn. App. 457, 461, 648 P.2d 99, *review denied*, 98 Wn.2d 1004 (1982).

Mr. Boot claims there was insufficient evidence he had a premeditated intent to kill Ms. Reese. *See* RCW 9A.32.030(1)(a). Premeditation, a necessary element of first degree murder, is defined as "the deliberate formation of and reflection upon the intent to take a human life" and involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Ortiz*, 119 Wn.2d 294, 312, 831 P.2d 1060 (1992). Motive, procurement of a weapon, stealth, and method of killing are factors relevant to establishing premeditation. *Pirtle*, 127 Wn.2d at 644.

The evidence was sufficient to establish premeditation. Mr. Boot's motive was shown by his prior use and posses-

---

[1]Mr. Boot also argues that the admission of the gang-related evidence violated his First Amendment right of freedom of association. But association evidence is admissible when relevant to an issue in a case. *State v. Campbell*, 78 Wn. App. 813, 822, 901 P.2d 1050, *review denied*, 128 Wn.2d 1004 (1995). The gang evidence was relevant to show motive, an issue here. Mr. Boot was an admitted gang member. The admission of evidence of his gang association did not violate his First Amendment rights.

sion of the murder weapon in the two days before the killing, his gang membership, and the high status accorded to a gang member who kills. The evidence established Mr. Boot, as well as Jerry, had used the gun in the several days before the shooting. The Boots abducted Ms. Reese, forced her back into the car, and took her to a remote location before committing the murder. These acts showed stealth. The shooter was in the front—either in the driver's or passenger's seat—and fired point blank at Ms. Reese, who was sitting in the back directly behind the driver. Ms. Reese was shot three times in the face. Conscious reflection and deliberation were shown by the method of killing. The evidence was sufficient for the jury to find premeditation.

Mr. Boot also claims the evidence was insufficient to support a finding he committed the crime in order to conceal his identity. Mr. Boot and Jerry abducted Ms. Reese from a downtown hotel parking lot and took her to a remote area. After being robbed of $43, she was killed. The Boots then drove to another location by the river to get rid of her body. They threw out her purse and left her car somewhere else. If robbery had been their only goal, the Boots had no reason to kidnap and kill Ms. Reese but to conceal their identities. The evidence was sufficient for the jury to find Mr. Boot committed the crime to conceal his identity. *See* RCW 9A.32.030(1)(a); RCW 10.95.020(9).

Mr. Boot claims the court erred by giving an accomplice instruction. The State asked the court to reword some of the jury instructions because it was unclear whether Mr. Boot had to be the shooter in order to be convicted. The State argued Mr. Boot could be convicted if either he or the other participant shot Ms. Reese, but no instruction stated that rule of law. The court agreed and added instruction 8:

> If you are convinced that the defendant participated in a crime or crimes and that a crime or crimes have been proven beyond a reasonable doubt, you need not determine which participant was an accomplice and which was a principal.

Mr. Boot objected to this instruction.

■■ ■■ A jury instruction may be given if it is a correct statement of the law and evidence exists to support giving the instruction. *State v. Benn*, 120 Wn.2d 631, 654, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993). Instruction 8 was a correct statement of the law. *See State v. Hoffman*, 116 Wn.2d 51, 103-05, 804 P.2d 577 (1991). In *Hoffman*, two persons were present when a police officer was shot and killed, but it was uncertain who fired the shot. Since accomplice liability imposes the same criminal liability on the accomplice as is imposed on the principal, the court stated the jury need only decide that both individuals participated in the crime; who actually shot the victim was irrelevant. *Id.* at 104-05. It thus upheld a jury instruction using similar wording to that given in instruction 8.

Here, the State introduced evidence suggesting both Mr. Boot and Jerry participated in the crime. The State argued an accomplice theory based on that evidence and was entitled to an accomplice instruction. Mr. Boot's defense was based on the theory he had no knowledge Jerry was going to· shoot Ms. Reese and his cousin was the shooter.[2] But it does not matter if Mr. Boot was the principal or an accomplice. RCW 9A.08.020(3)(a) provides that an accomplice is one who aids a principal: "[w]ith knowledge that it will promote or facilitate the commission of the crime . . . ." There is no requirement that the accomplice must share the same mental state as the principal. *State v. Guloy*, 104 Wn.2d 412, 431, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). The accomplice statute predicates criminal liability on general knowledge of the crime, not on specific knowledge of the elements of the participant's crime. *Hoffman*, 116 Wn.2d at 104. In any event, there was sufficient evidence for the jury to find that Mr. Boot pre-

---

[2]In his brief, Mr. Boot states:

"In this case, both codefendants acknowledged involvement in the underlying felony murder of the deceased. Through detailed statements to law enforcement authorities, they placed themselves at the scene of the kidnapping, robbery and murder of the deceased. The only disputed fact is the identity of the shooter and/or whether both codefendants shared the state of mind of premeditation at the time the deceased was killed."

meditated the killing of Ms. Reese. The jury instruction accurately stated the law and was supported by the evidence. The court did not err by giving instruction 8.

Affirmed.

KURTZ, A.C.J., and SWEENEY, J., concur.

Review denied at 135 Wn.2d 1015 (1998).