FILED
COURT OF APPEALS
DIVISION II

2014 AUG 26 AM 11: 37

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44157-8-II |
| Respondent, | |
| v. | |
| BALDEMAR LAZARO, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Baldemar Lazaro appeals from a second degree assault conviction and sentence. Lazaro argues that (1) the trial court abused its discretion when it admitted evidence of his gang affiliation and (2) his counsel was ineffective. In his statement of additional grounds[1] (SAG), Lazaro further asserts that (3) juror 14 biased the jury against him, inappropriately influencing the jury verdict; (4) the sentencing judge miscalculated his offender score and made biased statements; and (5) the prosecutor engaged in evidence spoliation and mismanagement under CrR 8.3. We hold that (1) the trial court abused its discretion when it admitted the gang-related evidence, but the error was harmless; and (2) Lazaro's ineffective counsel claim fails. Additionally, we hold that (3) Lazaro's claim that juror 14 was biased is meritless, (4) the sentencing score was correct and the judge was not biased, and (5) Lazaro's claims of mismanagement and evidence spoliation are unsupported by the record. Accordingly, we affirm Lazaro's conviction and sentence.

---

[1] RAP 10.10.

## FACTS

### I. BACKGROUND FACTS

In August 2011, Richard Hughes, a juvenile rehabilitative counselor at Green Hill School,[2] accompanied Lazaro, Braulio Mora, and four other residents into a recreation yard. Many residents in the intensive management unit at Green Hill are affiliated with gangs, including Lazaro and Mora, who are members of rival gangs, the Norteños and Sureños.

After Hughes let the six men outdoors, Lazaro and Mora separated from the group and began to "face off." III Verbatim Report of Proceedings (RP) (Aug. 9, 2012) at 28. Hughes directed Lazaro and Mora to stop fighting while he radioed for support, but before anyone arrived, Lazaro knocked Mora to the ground and continued to punch him. Hughes pulled Lazaro off Mora; however Lazaro freed himself from Hughes and kicked Mora across the face. Lazaro continued to punch Mora in the head and face until Hughes again separated Lazaro from Mora. After Lazaro knocked Mora down, Mora did not fight back and appeared as though he was trying to protect himself.

When Security Officer Rick Coward arrived, Mora had blood dripping from his face; Officer Coward transported Mora to the hospital. In total, Mora suffered four facial fractures.

### II. PROCEDURAL FACTS

The State charged Lazaro with second degree assault. Before trial, Lazaro moved to exclude all gang-related evidence and testimony under ER 404(b), arguing that it was irrelevant and unfairly prejudicial. Specifically, Lazaro argued that the jury would be more inclined to

---

[2] Green Hill School is a juvenile detention institution located in Chehalis, Washington and exclusively houses males ages 15 to 21. Green Hill housed both Lazaro and Mora in the intensive management unit, the most restrictive unit at Green Hill School.

convict him if they knew about his gang affiliation, and that the evidence was not relevant to the crime because neither Lazaro nor Mora asserted that the fight was related to their gang activities.[3] Lazaro further argued that because there were two eyewitnesses to the incident, the State did not need the gang evidence. The State argued that the gang-related evidence was relevant to show Lazaro's motive to fight Mora, was not unfairly prejudicial, and was helpful to show why the two men fought. The State argued that without the gang-related evidence, there would be a "big hole there as to why this happened." III VRP (Aug. 9, 2012) at 5. The court denied Lazaro's motion. Finding that the gang evidence was relevant to establish Lazaro's motive to fight, the trial court stated in an oral ruling,

> I'm not going to exclude it. I will allow it, of course, subject to laying an appropriate foundation. 'Motive' is specifically mentioned in rule 404(b) as being allowable—prior conducts—prior acts of prior conducts or gang affiliations, I would say, would be that to show motive. And I know motive is not an element, but it's part of the story, and I am going to allow the State to do it.

III VRP (Aug. 9, 2012) at 6-7.

At trial, Hughes testified that he was familiar with Lazaro and Mora because they were residents in the unit for which he was responsible. Hughes testified that Lazaro and Mora were members of rival gangs, and that gang rivalries are common at Green Hill and threaten the safety and security of staff and residents. Explaining the likely reason behind Mora's refusal to testify at trial, Hughes stated that staff usually does not get cooperation from victims and perpetrators when gangs clash at Green Hill because "it's their code."[4] III VRP (Aug. 9, 2012) at 50.

---

[3] Lazaro and Mora did not testify at trial nor give a written statement concerning the assault.

[4] Hughes explained that residents did not "snitch" because if they did, they would likely be targeted by other gang members in Green Hill. III VRP (Aug. 9, 2012) at 51.

Hughes also testified when recalled by the State that gang members generally do not back down from fights with rival gang members because they risk retaliation from their own gang for not "putting in work." III VRP (Aug. 9, 2012) at 83. Lazaro did not request a limiting instruction for the gang evidence or for any of Hughes's testimony.

The jury convicted Lazaro as charged. He appeals his conviction and sentence.

ANALYSIS

## I. ER 404(b) EVIDENCE

Lazaro argues that the trial court erred when it admitted gang evidence because there was no nexus connecting his gang affiliation to the assault. The State responds that the gang evidence was admissible under ER 404(b) because it was relevant to show motive for the assault or that it was admissible under ER 404(b)'s res gestae exception to give the jury a complete story of the crime. We agree with Lazaro that the trial court abused its discretion when it admitted the gang-related evidence and that the gang-related evidence was not admissible under the res gestae exception, but hold that the error was harmless.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's ruling under ER 404(b) for abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007); *State v. Yarbrough*, 151 Wn. App. 66, 81, 210 P.3d 1029 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Generally, evidence of other crimes, wrongs, or acts is not admissible to suggest that the defendant is a "'criminal-type person'" or to prove a person's character for the purpose of

4

establishing that he acted in conformity therewith on a given occasion. ER 404(b); *Yarbrough*, 151 Wn. App. at 82 (quoting *Foxhoven*, 161 Wn.2d at 175). On the other hand, evidence of other bad acts may be admitted for certain enumerated purposes, such as to prove motive, intent, or identity. ER 404(b). Even if evidence is admissible under one of ER 404(b)'s exceptions, it must still be excluded if the unfair prejudice substantially outweighs the evidence's probative value. *State v. Fuller*, 169 Wn. App. 797, 829-30, 282 P.3d 126 (2012). "Unfair prejudice" is caused by evidence that is likely to arouse an emotional response rather than a rational decision. *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987).

Gang evidence falls within the scope of ER 404(b)—while it may not be admitted to show the defendant is a bad person, it may be admitted for other purposes, such as proof of motive, identity, or intent. *Yarbrough*, 151 Wn. App. at 81. Courts consider evidence of gang affiliation prejudicial and require a connection between the crime and the defendant's gang affiliation in order to admit evidence of gang membership. *See Dawson v. Delaware*, 503 U.S. 159, 166-67, 112 S. Ct. 1093, 117 L. Ed. 2d 309 (1992); *State v. Embry*, 171 Wn. App. 714, 732, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005 (2013); *State v. Campbell*, 78 Wn. App. 813, 822, 901 P.2d 1050, *review denied*, 128 Wn.2d 1004 (1995). Furthermore, before the trial court can admit gang evidence, it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the intended purpose for the evidence, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) determine whether the probative value outweighs the prejudicial effect. *Yarbrough*, 151 Wn. App. at 82.

## B. ER 404(b)

Lazaro argues that the trial court failed to conduct the required analysis to determine whether the gang affiliation evidence was admissible for and relevant to prove Lazaro's motive for the assault. The State responds that the trial court did conduct the required analysis and properly determined that the gang affiliation evidence was admissible and relevant to prove motive. We agree with Lazaro and hold that the gang-related evidence had little probative value and was highly prejudicial. Although we agree with Lazaro that the trial court abused its discretion when it admitted the gang evidence, we hold that the error was harmless.

To convict Lazaro of second degree assault, the State had to prove beyond a reasonable doubt that Lazaro (1) intentionally assaulted Mora and (2) recklessly inflicted substantial bodily harm on Mora. RCW 9A.36.021(1)(a). "Motive," that is the inducing cause of an action,[5] is not an element of second degree assault. *See* RCW 9A.36.021(1)(a). But although the State is not *required* to prove motive, the State is *permitted* to introduce evidence of motive if the evidence is "'relevant and necessary to prove an essential element of the crime.'" *Yarbrough*, 151 Wn. App. at 83 (quoting *State v. Boot*, 89 Wn. App. 780, 789, 950 P.2d 964 (1998)). For example, gang evidence is often used to show that the motive for the crime was peer pressure. *See, e.g., Boot*, 89 Wn. App. at 789; *Campbell*, 78 Wn. App. at 822. Indeed, when the State articulates a theory that the defendant committed the crime in order to gain status in his gang, we have previously held that gang evidence was admissible to establish the defendant's motive. *Yarbrough*, 151 Wn. App. at 83.

---

[5] *State v. Boot*, 89 Wn. App. 780, 789, 950 P.2d 964 (1998).

But our analysis changes when the evidence is "overwhelming and undisputed" as to the events of the crime. *State v. Mee*, 168 Wn. App. 144, 159, 275 P.3d 1192, *review denied*, 175 Wn.2d 1011 (2012). In *Mee*, the defendant was on trial for first degree murder by extreme indifference, and the State presented uncontroverted evidence that the defendant shot a rifle two or three times indiscriminately at a crowded home. *Mee*, 168 Wn. App. at 159. We held that this evidence was so strong that *general* evidence of gang norms served no purpose other than to allow the State to suggest that the defendant was guilty because he had criminal propensities. *Mee*, 168 Wn. App. at 159. That is, when the untainted evidence is so compelling that gang evidence would add little, the gang evidence is unlikely to be "relevant and necessary" as required by *Yarbrough*. 151 Wn. App. at 83. Therefore, we require the State to show not only that gang evidence was necessary to prove the elements of the charged crime, but also that the defendant or his gang *actually* adhered to the gang behaviors described. *Mee*, 168 Wn. App. at 159.

This case is highly analogous to *Mee*. Here, the State offered uncontroverted evidence that Lazaro and Mora fought. The State offered uncontroverted evidence that Lazaro continued to attack Mora after Hughes broke up the fight, kicking Mora in the face and repeatedly punching him while he sat on the ground. The State offered uncontroverted evidence that Mora sustained substantial injuries. As in *Mee*, the untainted evidence was strong and specific. As in *Mee*, the gang evidence was general and did not go directly to any element. Hughes's testimony that Lazaro and Mora were in rival gangs, and that gang members *generally* do not back down from fights with rival gang members, was irrelevant to prove that Lazaro intentionally assaulted Mora by kicking and hitting him repeatedly in the face. Because it was clear to the jury what

happened between Lazaro and Mora, the gang evidence added nothing to the case except the "forbidden inference" that Lazaro's gang membership showed his propensity to commit the charged crime. *Mee*, 168 Wn. App. at 159 (quoting *State v. Wade*, 98 Wn. App. 328, 336, 989 P.2d 576 (1999)). The trial court abused its discretion by admitting the gang evidence because the danger of unfair prejudice substantially outweighed the probative value.

## C. RES GESTAE

In the alternative, the State argues that the gang evidence is admissible to prove res gestae. We disagree.

Res gestae evidence is evidence that "complete[s] the story of the crime by establishing the immediate time and place of its occurrence." *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997) (citing *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995)). That is, res gestae evidence makes up a "'link in the chain' of an unbroken sequence of events surrounding the charged offense." *Brown*, 132 Wn.2d at 571. As we held in *State v. Grier*, 168 Wn. App. 635, 645-47, 278 P.3d 225 (2012), res gestae is no longer a freestanding exception to ER 404(b). Instead, the proper analysis is relevance under ER 401. *Grier*, 168 Wn. App. at 646. If the res gestae evidence is relevant, then it is generally admissible under ER 402, unless its potential prejudice outweighs its probative value under ER 403. *Grier*, 168 Wn. App. at 646, 649.

*Mee* is instructive here as well. In that case, we analyzed gang affiliation evidence through the lens of res gestae, holding that "although the gang-related evidence was relevant to show the res gestae of the crime, any probative value in the gang-related evidence was outweighed by the danger of unfair prejudice." *Mee*, 168 Wn.App at 159 n. 6. Here, as described above, the gang-related evidence had little, if any, probative value because the

elements of the crime were clearly established through direct evidence. Therefore, any probative value the gang-related evidence added to the State's case against Lazaro was outweighed by the danger of unfair prejudice. The State's res gestae argument has no more force here than it did in *Mee*, and is rejected.

### D. HARMLESS ERROR

Although the trial court erred in admitting the gang evidence, the error was harmless in light of the evidence in this case. When a court erroneously admits prior bad acts evidence under ER 404(b), reversal is required "only if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). Here, the references to gang culture were brief and fleeting. In comparison, overwhelming untainted evidence established Lazaro's guilt. As described above, two guards testified to seeing Lazaro and Mora fight, that Lazaro continued to attack Mora even after the two were initially separated, that Mora was on the ground and that Mora did not fight back after being knocked down. The guards testified that Lazaro hit Mora multiple times in the face, and the State's medical evidence corroborated the guards' testimony. Like the eyewitness evidence in *Mee*, this is overwhelming evidence that Lazaro committed an assault in the second degree. This evidence remained untainted by the State's fleeting references to Lazaro's gang status, and it precludes any reasonable probability that the trial court's erroneous admission of gang evidence materially affected the jury's verdict. The error was harmless, and Lazaro's ER 404(b) claim fails.

### II. INEFFECTIVE ASSISTANCE OF COUNSEL

Lazaro argues that his counsel was ineffective because his attorney failed to request a limiting instruction on the ER 404(b) evidence and that there was no tactical reason to not

request a limiting instruction. We hold that even assuming Lazaro's counsel was deficient in failing to request a limiting instruction, counsel's failure to do so did not prejudice Lazaro.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002), *habeas corpus denied*, 158 Fed.Appx. 890 (9th Cir. 2005), *cert. denied*, 547 U.S. 1151 (2006). Prejudice occurs when, but for the deficient performance of counsel, there is a reasonable probability that the outcome of trial would have been different. *State v Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Even assuming, without deciding, that counsel was deficient by failing to request a limiting instruction, counsel's deficiency did not prejudice Lazaro. As described above, the untainted evidence was compelling. Although the gang evidence invited the jury to infer that Lazaro committed the charged crime because he was a bad person, the State also presented strong and uncontroverted evidence that Lazaro attacked Mora after the fight was broken up, and that Lazaro hit Mora repeatedly in the face. The weight of this evidence eliminates any reasonable probability that the jury found Lazaro guilty because of his gang membership, rather than on the other untainted evidence the State presented. Any failure by counsel did not prejudice Lazaro, and his ineffective assistance of counsel claim fails.

## III. STATEMENT OF ADDITIONAL GROUNDS

In Lazaro's SAG, he argues that (1) the jury was prejudiced against him because juror 14 failed to disclose previous employment at Green Hill, (2) the sentencing judge miscalculated his offender score, (3) the judge made biased statements, and (4) the prosecution mismanaged the

10

case and committed evidence spoliation when it failed to preserve any surveillance footage of the incident.[6] We reject all of the claims Lazaro raises in his SAG.

## A. JUROR BIAS AND MISCONDUCT

Lazaro asserts that he was denied a fair trial because juror 14 failed to disclose her previous employment at Green Hill, and that the trial court erred when it denied Lazaro's motion for a hearing to determine whether a new trial was required. We review a trial court's investigation into jury misconduct for abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 761, 123 P.3d 72 (2005). A party alleging juror misconduct has the burden to show that misconduct occurred. *State v. Hawkins*, 72 Wn.2d 565, 566, 434 P.2d 584 (1967). Lazaro cannot meet that burden here because the record shows that juror 14 had, in fact, disclosed her previous employment during voir dire and neither party moved to dismiss her.[7] Lazaro's claims are based entirely on bare allegations recited in a letter from juror 12. The letter claims, among other things, that juror 14 failed to disclose her employment at Green Hill and improperly influenced the jury during deliberations. Nothing in the record corroborates juror 12's claims or otherwise indicates jury misconduct. The trial court did not abuse its discretion when it denied Lazaro's motion for a new trial.

---

[6] Because we address the issue above, Lazaro's SAG arguments regarding ER 404(b) evidence are not included here. Furthermore, Lazaro's fifth assertion—that it is unfair to punish him while allowing Mora to decline to testify when both Lazaro and Mora were motivated by duties to their respective gangs—has no bearing on the jury verdict, the imposed sentence, judicial bias, or any potential mismanagement by the prosecution. Therefore, we do not address this point further.

[7] On the record at Lazaro's sentencing hearing, defense counsel stated that juror 14 made the disclosure during voir dire and that neither party moved to dismiss her.

## B. SENTENCING ERROR

Next, Lazaro argues that the trial court miscalculated his offender score in two ways. He argues that the trial court improperly counted his juvenile offenses as two points each instead of one, meaning that his offender score should have been four instead of eight. Lazaro also argues that his prior convictions stemmed from the same criminal conduct, rather than four distinct criminal acts. We disagree.

We review the sentencing court's calculation of an offender score de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003); *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). However, we review the sentencing court's determination that multiple offenses were not the same criminal conduct for abuse of discretion or misapplication of the law. *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994).

As a threshold matter, we address Lazaro's claim that his prior robbery and attempted robbery convictions constituted the same criminal conduct for purposes of calculating his offender score. As our Supreme Court has held, a defendant may waive the issue of same criminal conduct when he affirmatively stipulates to his offender score. *State v. Hickman*, 116 Wn. App. 902, 907-08, 68 P.3d 1156 (2003) (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 875, 50 P.3d 618 (2002)); *State v. Nitsch*, 100 Wn. App. 512, 518-20, 997 P.2d 1000, *rev. denied*, 141 Wn.2d 1030 (2000); *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 495, 158 P.3d 588 (2007). Here, the prosecutor stated that the parties had stipulated to an offender score of eight, and Lazaro's counsel acknowledged that the sentencing range was correct. The record clearly shows that Lazaro affirmatively stipulated to his offender score and, thus, he has waived his right to challenge whether his robbery convictions constituted the same criminal conduct.

Next, Lazaro argues that the sentencing court should have calculated one point each for his prior robbery and attempted robbery convictions because they were juvenile convictions. His argument founders on the plain language of the statute. Because Lazaro was convicted of a violent offense in the present case, the sentencing court is to apply RCW 9.94A.525(8). That subsection states that the sentencing court should "count two points for each prior adult *and juvenile* violent felony offense." RCW 9.94A.525(8) (emphasis added). That is precisely what the sentencing court did: Lazaro's first degree robbery convictions and the attempted first degree robbery conviction were all violent felony offenses and counted two points each, whether or not he was a juvenile when he committed those offenses.[8] Lazaro's offender score was properly stipulated as eight-and-one-half points, indicating a standard sentencing range of 53 to 70 months. The sentencing court adhered to this sentencing range when it imposed a sentence of 70 months. The sentencing court committed no error, and we reject Lazaro's sentencing claims.

## C. JUDICIAL BIAS

Lazaro next contends that the sentencing judge was unfairly biased, pointing to the judge's remarks during the sentencing hearing. The appearance of fairness doctrine demands the absence of actual or apparent bias on the part of the judge or decision-maker. *State v. Worl*, 91 Wn. App. 88, 96, 955 P.2d 814 (1998) (citing *State v. Dagenais*, 47 Wn. App. 260, 261, 734 P.2d 539 (1987)). To succeed, Lazaro must present evidence of actual or potential bias. *Worl*, 91

---

[8] Lazaro also had a third degree assault conviction, which is a nonviolent offense. As a nonviolent felony offense committed as a juvenile, this conviction counted for only half a point. RCW 9.94A.525(8). Because offender scores are rounded down to the nearest whole number, the third degree assault conviction had no effect on Lazaro's sentence. RCW 9.94A.525.

Wn. App. at 96; *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172 (1992). Lazaro bases his bias

claim on the following remarks:

> The fact that this was a gang involvement, well, that's unfortunate for Mr. Lazaro. He made the choice to be in a gang, and he made the choice to continue associating in it and behaving like that.

II VRP (Oct. 31, 2012) at 29.

Lazaro fails to provide evidence of actual or potential bias. The judge's remarks did not

reflect any personal antipathy toward Lazaro, but merely rebutted Lazaro's argument that he

should receive a low-end sentence because he "would have been beaten down" by his own gang

if he had not attacked Mora. II VRP (Oct. 31, 2012) at 28. The judge reasonably determined

that Lazaro could not claim duress as a mitigating factor when Lazaro himself had created the

duress by choosing to associate with the gang. Nor does the fact that Lazaro received the

maximum sentence under the statutory range, 70 months, indicate bias. The judge noted that

there were a number of aggravating factors that would support a top of the range sentence but

that he would not impose an exceptional sentence despite the aggravating factors. Nothing in the

sentencing judge's conduct creates an appearance of bias, and we reject Lazaro's claims of

judicial misconduct.

D. PROSECUTORIAL MISMANAGEMENT AND EVIDENCE SPOLIATION

Lastly, Lazaro claims that the prosecution mismanaged the case and engaged in evidence

spoliation. The trial court has discretion to dismiss a criminal prosecution if the defendant can

show by a preponderance of the evidence both (1) arbitrary action or governmental misconduct

and (2) actual prejudice affected the defendant's right to a fair trial.[9] CrR 8.3(b); *State v. Martinez*, 121 Wn. App. 21, 29, 86 P.3d 1210 (2004). CrR 8.3(b) dismissal is an extraordinary remedy that is "improper except in truly egregious cases of mismanagement or misconduct that materially prejudice the rights of the accused." *Martinez*, 121 Wn. App. at 30. Where the defendant argues that evidence was improperly destroyed, the defendant must be able to show some indication that the destroyed evidence could have been exculpatory. *See Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). We review the trial court's decision on a CrR 8.3(b) motion to dismiss for manifest abuse of discretion. *Martinez*, 121 Wn. App. at 30.

At the relevant time, Green Hill's standard procedure was to destroy video surveillance records after 90 days, even if the surveillance captured an incident referred to law enforcement for prosecution. While the Chehalis Police Department received a referral about the fight in September of 2011, the police did not refer the case to the prosecutor until January 2012, by which time Green Hill had destroyed the surveillance video. While the police department's delay was lengthy, Lazaro fails to show that it was out of the ordinary, let alone arbitrary or improper. The delay could have been caused by high caseloads, rather than any wrongdoing by the government. Furthermore, Lazaro cannot demonstrate prejudice because he does not show that the video surveillance would have been exculpatory. His attorney never saw the video, the prosecutor never saw the video, and no one could say whether the video would have corroborated Lazaro's version of events. Given the weight of the State's evidence, it is at least as likely that the video would merely have lent further support to the State's theory. Lazaro fails

---

[9] Lazaro brought a CrR 8.3(b) motion to dismiss after the State rested; the trial court denied the motion.

No. 44157-8-II

to carry his burden of proof establishing that there was arbitrary government action or misconduct and that he was prejudiced. Accordingly, we hold that the prosecutor did not mismanage the case under CrR 8.3 and that there was no evidence spoliation.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK, J.

JOHANSON, C.J.

16

Melnick, J. — (Concurrence) I concur with the result the majority reaches. However, I write separately to state my disagreement with the majority's reasoning solely on the admission of the 404(b) evidence issue. As the majority correctly points out, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). "A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court. Where reasonable persons could take differing views regarding the propriety of the trial court's actions, the trial court has not abused its discretion." *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001) (citations omitted). Here, the trial court properly engaged in the four part analysis for the admission of ER 404(b) evidence. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d.207 (2012). I cannot say that no reasonable person would have decided the issue the way the court did. I also cannot say that the decision to admit "gang evidence" in this case was manifestly unreasonable or based on untenable grounds. I would hold that the trial court did not abuse its discretion by admitting the "gang evidence." In all other respects, I concur in the majority's opinion and conclusion.

MELNICK, J.