# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 80475-8-I |
| v. | UNPUBLISHED OPINION |
| ANDRES ESTEBAN GONZALEZ MARTINEZ, | |
| Appellant. | |

DWYER, J. — Andres Esteban Gonzalez Martinez appeals from his convictions of child molestation in the second degree. Gonzalez Martinez contends that the prosecutor, during rebuttal closing argument, disparaged the role of defense counsel and improperly commented on the defendant's exercise of several constitutional rights. He also asserts that the trial court failed to recognize that it had discretion to impose an exceptional sentence below the standard range. Moreover, in his statement of additional grounds, Gonzalez Martinez contends that (1) insufficient evidence supports his convictions, and (2) he is entitled to a new trial so that he can present an alibi defense. Because Gonzalez Martinez does not establish an entitlement to relief on any of his claims, we affirm.

I

Gonzalez Martinez was involved in a romantic relationship with E.S.'s mother. During E.S.'s sixth-grade year, which began in 2014 and ended in 2015, Gonzalez Martinez moved into an apartment with E.S.'s mother and E.S.

In January 2017, when E.S. was in eighth grade and 13 years old,[1] E.S. had surgery to remove a cyst from her ovary. E.S. arrived at the hospital on January 10 and remained there for three days. After E.S. left the hospital, she slept on a couch located in the living room of her mother's apartment for one week. As a result of the surgery, E.S. was prescribed oxycodone, which made her feel tired and put her into a "very deep sleep."

One night, while E.S. was recovering from her surgery, she tried to sleep in her bed but, because she was experiencing "too much pain," she returned to the living room to sleep on the couch. Gonzalez Martinez and E.S.'s mother had consumed alcohol that night. As E.S. was falling asleep, Gonzalez Martinez entered the living room and searched for batteries. Gonzalez Martinez asked E.S. if she had seen any batteries, and she responded that she had not. E.S. fell asleep. At some point during the night, E.S. "woke up to a heavy feeling." She "realized that Andres was on top of [her] and he was humping [her]." Gonzalez Martinez was "straddling [E.S.'s] legs" and was "thrusting his hips against" her hips. E.S. "froze" and felt "really, really scared and numb." Gonzalez Martinez "humped" E.S. for approximately six minutes. He then "[got] up from the couch and he le[ft]."

---

[1] E.S. was born on June 16, 2003.

2

E.S. did not immediately inform her mother about what had happened because E.S. "was too scared." E.S. had argued with her mother about Gonzalez Martinez before but, during those instances, her mother "never listened to [her]." E.S. believed that, if she were to tell her mother about the incident, "nothing would happen."

On a subsequent occasion, while E.S. was in the kitchen, Gonzalez Martinez approached E.S. from behind and "bear-hugged" her. As Gonzalez Martinez hugged E.S., he touched her breasts with both of his hands, and placed one hand underneath her clothing.

Then, during the second semester of E.S.'s eighth-grade year, which lasted from January to June 2017, Gonzalez Martinez touched E.S.'s vagina. On the day of this incident, E.S. was in her bedroom, laying on the floor and coloring. After coloring, E.S. tried to fall asleep. E.S. subsequently heard the door open. She initially thought that her dog might have opened the door "[b]ecause he comes in a lot at night." However, E.S. subsequently "fe[lt] someone get on top of" her. E.S. knew that this person was Gonzalez Martinez because she "could feel his body" and "knew it wasn't [her] mom." E.S. froze. She then "felt his hand go down [her] pants." Gonzalez Martinez put his hand under E.S.'s underwear and touched her vagina. E.S. felt scared. After Gonzalez Martinez touched E.S.'s vagina, he walked out of the bedroom without saying anything.

Several weeks after her eighth-grade school year concluded, E.S. had an argument with Gonzalez Martinez about walking and feeding her dog. Following the argument, E.S. telephoned her father and asked him to pick her up from her

3

mother's apartment. E.S.'s father arrived at the apartment approximately 10 minutes later. E.S. got into his car and he drove E.S. to his house.

After arriving at her father's house, E.S. cried and laid on a bed with her stepmother. E.S.'s father left the house for work. E.S. then informed her stepmother "about the couch incident and what happened." E.S. did not tell her stepmother about any other incident. According to E.S., "I just wasn't ready to tell her. I didn't want to believe it myself." E.S.'s stepmother telephoned E.S.'s father and he returned home. She also telephoned the police.

Approximately one hour later, Officer Micah Smith arrived at E.S.'s father's house. E.S. and her father were holding each other and crying. E.S. informed Officer Smith about the incident on the couch. Officer Smith drafted a report regarding that incident.

A police sergeant then reviewed Officer Smith's report and "reached out to [E.S's] family . . . to get a little bit more information." After "talking to the family," the sergeant assigned the matter to Detective Elizabeth Kennedy. Detective Kennedy interviewed E.S. on two occasions. During the first interview, E.S. discussed only the couch incident. E.S. had started her freshman year of high school, felt "overwhelmed," and "wasn't ready" to discuss the other incidences. During the second interview, E.S. informed Detective Kennedy of the "hugging incident." E.S. did not inform Detective Kennedy that Gonzalez Martinez had touched her vagina.

E.S. first disclosed that Gonzalez Martinez had touched her vagina during an interview with the prosecutor and defense counsel. E.S. explained that she

4

came forward at that time because she "wanted to be strong." E.S. feared that "there would be judgment" because she "didn't tell anyone sooner."

The State charged Gonzalez Martinez with two counts of child molestation in the second degree: the first count occurring "between January 14, 2017 and January 22, 2017," and the second count occurring "between September 7, 2016 and May 30, 2017." Following a jury trial, Gonzalez Martinez was found guilty as charged. The trial court imposed a standard-range sentence of 31 months of incarceration.

Gonzalez Martinez appeals.

II

Gonzalez Martinez contends that the prosecutor engaged in misconduct during rebuttal closing argument by making two improper statements. According to Gonzalez Martinez, both of the contested statements disparaged defense counsel and improperly commented on his exercise of several constitutional rights, including the rights to counsel, to cross-examination, to present a defense, and to go to trial. We disagree.

Where, as here, a defendant objects to remarks at trial, the defendant bears the burden of demonstrating that the statements were improper and that there is a substantial likelihood that the comments prejudiced the jury's verdict. State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). Moreover, "[a] defendant claiming prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial." State v. Miles, 139 Wn. App. 879, 885, 162 P.3d 1169

5

(2007). Indeed, we review the propriety of a prosecutor's conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

During closing argument, a prosecutor is afforded wide latitude in drawing and expressing reasonable inferences from the evidence. State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). Additionally, "[a]s an advocate, the prosecuting attorney is entitled to make a fair response to the arguments of defense counsel." State v. Brown, 132 Wn.2d 529, 566, 940 P.2d 546 (1997). In this regard, "[i]t is not misconduct for a prosecutor to argue that the evidence does not support the defense theory." State v. Graham, 59 Wn. App. 418, 429, 798 P.2d 314 (1990).

However, "[i]t is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011); see, e.g., State v. Warren, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008) (improper but not prejudicial for prosecutor to argue that all defense attorneys mischaracterize evidence and twist the facts); State v. Gonzales, 111 Wn. App. 276, 283-84, 45 P.3d 205 (2002) (improper and prejudicial for prosecutor to remark that, unlike defense lawyers, prosecutors take an oath to "see that justice is served"); State v. Negrete, 72 Wn. App. 62, 66-67, 863 P.2d 137 (1993) (improper but not prejudicial for prosecutor to argue that defense counsel is being paid to twist the words of a witness).

Additionally, our Supreme Court "has recognized that '[t]he State can take no action which will unnecessarily "chill" or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right.'" State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (alteration in original) (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014). However, "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights." Gregory, 158 Wn.2d at 806. "[T]he relevant issue [is] 'whether the prosecutor manifestly intended the remarks to be a comment on that right.'" Gregory, 158 Wn.2d at 807 (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)). Accordingly, "so long as the focus of the . . . argument 'is not upon the exercise of the constitutional right itself,' the . . . argument does not infringe upon a constitutional right." Gregory, 158 Wn.2d at 807 (quoting State v. Miller, 110 Wn. App. 283, 284, 40 P.3d 692 (2002)).

Here, Gonzalez Martinez asserts that two statements made by the prosecutor during rebuttal closing argument both disparaged defense counsel's role and improperly commented on his exercise of several constitutional rights.

First, Gonzalez Martinez contests the following statement made by the prosecutor:

> Now, I asked [E.S.] about our interview during her testimony, and she said, "I wanted to come to my truth and tell somebody. I thought there would be judgment from attorneys because I didn't tell anyone sooner." And guess what? There is. You've just heard that argument about that judgment.

The prosecutor did not make an improper statement. During closing argument, defense counsel claimed that E.S. accused Gonzalez Martinez of touching her vagina only because a detective informed E.S. that "no more charges will be forthcoming":

> And let's remember something important. Detective Kennedy admitted that after the interview where new details were given, she . . . told [E.S.'s father], [E.S.'s mother] and [E.S.], "I'm going to note what you told me. It's important to keep talking, but no more charges will be forthcoming at this time."
> "No more charges will be forthcoming." That was the information that Detective Kennedy relayed to the family. It is only after that point, after the previous statement about "He was on top of me for a second and got off" to Detective Kennedy that the narrative changes. It is only after that point that there is an allegation of skin-to-skin contact.

The prosecutor's statements were a fair response to the argument advanced by defense counsel. Again, defense counsel claimed that E.S. accused Gonzalez Martinez of touching her vagina only because a detective indicated that "no more charges will be forthcoming." In response, the prosecutor explained that, based on E.S.'s testimony, the defense counsel's argument was, itself, an example of why E.S. hesitated to come forward with her accusation. The prosecutor drew a reasonable inference from E.S.'s testimony. As such, the prosecutor neither disparaged the role of defense counsel nor improperly commented on the exercise of any constitutional right. Accordingly, the prosecutor's statements were not improper.

Next, Gonzalez Martinez contends that the prosecutor disparaged defense counsel's role and improperly commented on the exercise of numerous constitutional rights in the final sentence of the following excerpt:

8

> I asked [E.S.] if she had fears related to telling us, and she said, "It's not easy to tell someone if it wasn't right away. If I told someone, I would actually have to think about it. And yes, I had to think about it since I told the attorneys. I get really anxious a lot."
>
> She didn't want to talk about it because she didn't want to think about it. We're making her relive this over and over and over again, and taking apart her 13-year-old memory.

The prosecutor's remark was not improper. During closing argument, defense counsel attempted to explain how certain discrepancies in E.S.'s testimony indicated that her testimony was not credible:

> We are also not talking about a young child. We are talking about a young teenager. She's a child, to be sure. She's 13. We're not talking about a 5-year-old. And for a 13-year-old to previously say, "No, I know that the couch one happened second because that one was the worst one," and then to change and say, "No, the vagina happened second, the vagina touch happened second," well, victims who are abused repeated times over a course of an extended length of time surely can confound and confuse the types of abuse, the location of the abuse and other details.
>
> But a 13-year-old teenage girl who loathes her stepfather, who loathes the man whom her mom is dating, not her stepfather, that she would be subjected to and then not remember, without any drug influence or otherwise, and then confuse the two incidents and decidedly say on one occasion it happened this way and on another occasion it happened the reverse way, that is a level of confusion, of discrepancy that indicates that the narrative is not accurate.

The contested statement made by the prosecutor offered a direct response as to why E.S. may have altered her account of events: "We're making her relive this over and over and over again, and taking apart her 13-year-old memory." As such, the prosecutor fairly responded to the argument advanced by defense counsel. Moreover, by making this statement, the prosecutor did not disparage the role of defense counsel. In fact, the prosecutor stated that "*[w]e're*

9

making her relive this over and over and over again." (Emphasis added.)

Therefore, this statement was not directed at, and it did not comment on, defense

counsel's role.

Additionally, the prosecutor's remarks were not focused on the exercise

of any constitutional right. Rather, the statements served the legitimate purpose

of explaining why E.S. may have changed her account of events. Thus, we

decline to hold that the prosecutor manifestly intended to comment on any

constitutional right that was exercised by Gonzalez Martinez.

Accordingly, the prosecutor did not engage in misconduct.

III

Gonzalez Martinez next asserts that the trial court erred by failing to

recognize that it had discretion to impose an exceptional sentence below the

standard range. Because the record clearly demonstrates that the trial court

recognized its discretion, we disagree.

Where a defendant has requested an exceptional sentence below the

standard range, "review is limited to circumstances where the court has refused

to exercise discretion at all or has relied on an impermissible basis for refusing to

impose an exceptional sentence below the standard range." State v. Garcia-

Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "While no defendant is

entitled to an exceptional sentence below the standard range, every defendant is

entitled to ask the trial court to consider such a sentence and to have the

alternative actually considered." State v. Grayson, 154 Wn.2d 333, 342, 111

P.3d 1183 (2005). Thus, "[t]he failure to consider an exceptional sentence is

reversible error." Grayson, 154 Wn.2d at 342. Similarly, "[a] trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion warranting remand." State v. Bunker, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008).

RCW 9.94A.535 sets forth the circumstances in which a court may deviate from the standard sentencing guidelines. Pursuant to this statute, a court "may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The statute further provides that a court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). The statute then sets forth a non-exhaustive list of mitigating circumstances which could justify the imposition of an exceptional sentence below the standard sentence range for an offense.

Here, the record clearly indicates that the trial court recognized its discretion to impose an exceptional sentence below the standard range absent an applicable mitigating factor listed in RCW 9.94A.535:

> So this Court has the authority to deviate from the standard range for substantial and compelling reasons. The mitigating factor listed in RCW 9.94A.535 that the Court finds could apply in this case is (g), that:
> > "The operation of the Multiple Offense Policy of RCW 9.94A-589 results in a presumptive sentence that is clearly excessive in light of the purpose of the [Sentencing Reform Act]."
> The Court points out that this list of mitigating factors is not exclusive. The Court also recognizes that any deviation from the standard sentence must distinguish the Defendant's crime from

others in the same category.  Exceptional sentences based on factors particular to the individual Defendant are not permitted.

Nevertheless, Gonzalez Martinez asserts that the trial court impermissibly determined that its discretion was limited by stating that "[e]xceptional sentences based on factors particular to the individual Defendant are not permitted." According to Gonzalez Martinez, "[t]here is no legal basis for this limitation."  Not so.  In State v. Law, 154 Wn.2d 85, 89, 110 P.3d 717 (2005), our Supreme Court held:

> [T]he [Sentencing Reform Act] requires factors that serve as justification for an exceptional sentence to relate to the crime, the defendant's culpability for the crime, or the past criminal record of the defendant.  Factors which are personal and unique to the particular defendant, but unrelated to the crime, are not relevant under the [Sentencing Reform Act].[2]

Thus, the trial court properly recognized the scope of its discretion to impose an exceptional sentence below the standard range.

Additionally, the trial court properly exercised its discretion by considering the facts of the case and determining that there were no substantial and compelling reasons to justify an exceptional sentence below the standard range. Defense counsel argued that the trial court should impose an exceptional sentence below the standard range because: (1) the offenses in this case were not "very egregious" or "particularly egregious" as compared to other molestation cases because Gonzalez Martinez did not "compel[] a child to perform oral sex

---

[2] Because a sentencing court may consider factors that relate to a defendant's culpability for the crime of which he or she is being sentenced, factors that are not strictly related to the crime itself or the past criminal record of the defendant, such as age, may be considered by the court.  See, e.g., State v. O'Dell, 183 Wn.2d 680, 683, 358 P.3d 359 (2015) (remanding "for a new sentencing hearing at which the trial court can consider whether youth diminished [the defendant's] culpability for [the] offense").

on [him]," (2) "unlike a citizen in the same position who could [have] easily take[n] a lesser plea," Gonzalez Martinez "proceeded to trial" in order "to fight for his ability to stay in the U.S.," (3) a sentence of six months "is not far afield of the normal departure sentences that the courts issue," (4) "[a] sentence of six months will protect the public" because Gonzalez Martinez "will be deported after he serves his sentence in this case," (5) "[s]ending [Gonzalez Martinez] to prison . . . does not provide a chance for rehabilitation" because it is unlikely that he will receive "sex-offense treatment," (6) the sentence requested by the prosecution would cost the State a lot of money, and (7) Gonzalez Martinez is likely to "wait[] for weeks or months in [a] Federal facility . . . before deportation."

In declining to impose an exceptional sentence below the standard range, the trial court explained:

> First, the Court does not find that the Multiple Offense Policy results in a sentence here that is too excessive.
> In this case, Mr. Gonzales-Martinez [sic] has a score of 3, making his standard range 31 to 41 months. Even if there were no multiplier and only one count, the standard range would be 15 to 20 months, which is significantly more than the 6 months that the Defense is requesting as an exceptional down.
> The Court also does not find that the effects of the multiple crimes are trivial, particularly to the victim in this case, who will live with the effects of these criminal acts for her entire lifetime.
> Second, there are no factors that have been provided to the Court that makes the facts in this case less egregious than facts in other cases of child molestation in the second degree. In this case there was hand-to-genital contact and there was also sexual contact through clothing, and both counts involved a vulnerable child in a vulnerable position, both times while she was asleep or falling asleep in a place that one would expect a child to feel safe.
> The Court does not find these facts to be less egregious than other child molestation in the second degree cases. The Court also does not find that Defendant's culpability was low, and the acts that the jury found Mr. Gonzales-Martinez [sic]

committed fall squarely within the definition of child molestation in the second degree and they were predatory in nature.

Third, the Court also does not find that there are sufficient facts put forward to establish that Mr. Gonzales-Martinez [sic] will, in fact, be deported; but even if he were to be deported, an exceptional sentence downward will not, as Defense counsel has pointed out in her materials, prevent that from happening. Accordingly, that is not a substantial or compelling reason for departure from the standard range.

Finally, the Court does find that a standard-range sentence in this case is consistent with the goals of the [Sentencing Reform Act]; however, the Court believes that a low-end sentence is appropriate and the Court is imposing the low end in this case.

Because the trial court considered the facts and concluded that an exceptional sentence below the standard range was unwarranted, Gonzalez Martinez is not entitled to appeal the court's ruling. See Garcia-Martinez, 88 Wn. App. at 330 ("[A] trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling.").

Accordingly, Gonzalez Martinez's assignment of error fails.

IV

In his statement of additional grounds, Gonzalez Martinez asserts that the evidence adduced at trial was insufficient to sustain his convictions of child molestation in the second degree.[3]  We disagree.

When reviewing the sufficiency of the evidence to sustain a conviction, we view the evidence in the light most favorable to the State, draw all reasonable inferences from the evidence in the State's favor, and interpret the evidence most

---

[3] Gonzalez Martinez also appears to contend that E.S.'s testimony was not credible. However, [q]uestions of credibility are left to the trier of fact and will not be overturned on appeal." State v. Boot, 89 Wn. App. 780, 791, 950 P.2d 964 (1998).

strongly against the defendant.  State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  A claim of insufficiency admits the truth both of the State's evidence and all reasonable inferences from the evidence.  Salinas, 119 Wn.2d at 201.  The question on appeal is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Under RCW 9A.44.086(1),

[a] person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

Moreover, "'[s]exual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."  RCW 9A.44.010(2).

Sufficient evidence was adduced at trial to sustain both of Gonzalez Martinez's convictions of child molestation in the second degree.  The first count alleged that Gonzalez Martinez molested E.S. "between January 14, 2017 and January 22, 2017."  Because E.S. was born on June 13, 2003, she was 13 years old during this period of time.  Further, Gonzalez Martinez was born in 1986, which made him more than 36 months older than E.S.

During the trial, E.S. testified that Gonzalez Martinez "straddl[ed] [her] legs" and "thrust[ed] his hips against" hers as she was trying to sleep on the couch in her mother's living room and recovering from surgery.  Gonzalez Martinez "humped" E.S. for approximately six minutes.  As such, sufficient

15

evidence was adduced that Gonzalez Martinez had sexual contact with E.S. in violation of RCW 9A.44.086(1).

Furthermore, a reasonable jury could have inferred that this incident occurred between January 14 and January 22, 2017. E.S.'s mother testified that E.S. had surgery on January 10 and remained in the hospital for three days. She further testified that, after E.S. returned home from the hospital, E.S. slept on a couch in the living room for one week. Thus, sufficient evidence supports Gonzalez Martinez's conviction for the first count of child molestation in the second degree.

Next, the second count alleged that Gonzalez Martinez molested E.S. "between September 7, 2016 and May 30, 2017." E.S. testified that Gonzalez Martinez touched her vagina during the second semester of her eighth-grade year. This semester lasted from January to June 2017. Thus, a reasonable jury could have determined that Gonzalez Martinez touched E.S.'s vagina between September 7, 2016, and May 30, 2017.

Additionally, because E.S's 14th birthday occurred a week after the second semester of her eighth-grade year had ended, it was established that E.S. was 13 years old during the relevant time period.

Finally, E.S. described the incident of Gonzalez Martinez touching her vagina in detail. Indeed, according to E.S., on the day that the incident occurred, she was coloring in her room and, after she finished coloring, she tried to fall asleep. E.S. then heard the door open and "fe[lt] someone get on top of" her. E.S. knew that this person was Gonzalez Martinez because she "could feel his

body" and "knew it wasn't [her] mom." She then "felt his hand go down [her] pants." Gonzalez Martinez put his hand under E.S.'s underwear and touched her vagina. Given this testimony, a reasonable jury could conclude that, by touching E.S.'s vagina, Gonzalez Martinez had sexual contact with E.S. in violation of RCW 9A.44.086(1).

Accordingly, sufficient evidence supports Gonzalez Martinez's convictions of child molestation in the second degree.

V

Gonzalez Martinez finally contends that he is entitled to a new trial because he was unable to present an alibi defense with regard to the allegation that he touched E.S.'s vagina. However, the trial court, in ruling on a motion in limine, permitted Gonzalez Martinez to present an alibi defense in the event that information emerged concerning the date of the molestation. Because the trial court did not abuse its discretion by making this ruling, Gonzalez Martinez's assignment of error fails.

"[W]e will not disturb a trial court's rulings on a motion in limine . . . absent an abuse of the court's discretion." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists." Powell, 126 Wn.2d at 258.

During the trial, Gonzalez Martinez asserted "general denial" as a defense. The State filed a motion in limine regarding Gonzalez Martinez's "disclosure of Defense." In response to the State's motion in limine, defense

counsel requested that the trial court permit Gonzalez Martinez to present evidence regarding an alibi defense in the event that E.S. "provide[d] clarity" as to the date that E.S. alleged her vagina was touched. The trial court then granted the State's motion in limine in part, ruling: "If new information as to [the] date of [the] incident comes to light, defendant may seek to offer [an] alibi defense."

The trial court's ruling was not manifestly unreasonable or based on untenable grounds or reasons. Indeed, the trial court permitted Gonzalez Martinez to present an alibi defense if information regarding the date of the molestation emerged. The fact that Gonzalez Martinez failed to elicit such information at trial is not an error that may be attributed to the trial court. Accordingly, Gonzalez Martinez does not establish an entitlement to relief.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____    _____
Coburn, J.                  Mann, C.J.